ORIGINAL

**JUDGE JAMES G. CARR**

**FILED**

2005 OCT -5 AM 10: 31

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**WESTERN DIVISION (TOLEDO)**

# 3:05CV7388

|  |  |
|---|---|
| JOHN JOHNSON, Individually and On Behalf Of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| vs. | **JURY TRIAL DEMANDED** |
| DANA CORPORATION, MICHAEL J. BURNS and ROBERT C. RICHTER, | |
| Defendants. | |

Plaintiff alleges the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Dana Corporation ("Dana" or the "Company"), as well as regulatory filings and reports, securities analysts reports and advisories about the Company, press releases, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1.	This is a class action on behalf of all persons and entities who purchased or otherwise acquired the securities of Dana between March 23, 2005 to September 14, 2005, inclusive (the "Class Period"), and who were damaged thereby, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Dana is a Toledo-based designer and supplier of automobile components and systems. By the beginning of the Class Period, Dana's profits were being negatively impacted by an increase in the price of raw materials – steel, in particular – which was disconcerting to investors. In order to assure the market that the Company's business was performing according to plan, and would continue to perform well even if steel prices did not decline materially, defendants artificially inflated Dana's net income through improper accounting and, in addition, issued earnings guidance that lacked any reasonable basis given the Company's true performance and prospects, which were known to defendants but not the investing public. In particular, defendants' Class Period representations regarding Dana's historical financial performance and condition and its expected 2005 earnings were materially false and misleading because:

      a.     The Company had improperly accounted for price increases, which materially artificially inflated its second quarter of 2005 income;

      b.     The Individual Defendants' assurances, made in written certifications filed with the SEC, that the second quarter Form 10-Q was free from misstatements and fairly presented the Company's financial condition and results of operations was patently false;

      c.     The Company's apparent success was the result of improper accounting, did not reflect the reality of its business and deceived investors; and

      d.     In light of these facts, which were known to defendants, defendants' guidance was not based on any rational basis and could not be met without a material drop in raw material prices, contrary to defendants' repeated assurances to the contrary.

2

3.      On September 15, 2005, before the open of ordinary trading, Dana issued a press release announcing that it would likely restate second quarter 2005 financial results and that it had dramatically lowered its 2005 earnings guidance, to $0.60 to $0.70 per share from $1.30 to $1.45, a more than 100% reduction. Because of the expected earnings shortfall, the Company may have to write down its U.S. deferred tax assets and may be in violation of covenants contained in a loan agreement, according to the press release. A main reason given for the halving of the 2005 guidance was high steel costs, a factor that defendants repeatedly assured the market was already considered, and accounted for, in the guidance.

4.      In reaction to this announcement, the price of Dana stock fell dramatically, from $12.78 per share on September 14, 2005 to $9.86 per share on September 15, 2005, a one-day drop of 22.8% on unusually heavy trading volume.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)], and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

7.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  In addition, Dana maintains its corporate headquarters in this District.

8.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the NYSE.

## PARTIES

9.     Plaintiff John Johnson purchased Dana common stock during the Class Period, as set forth in its certification, annexed hereto, and was damaged thereby.

10.     Defendant Dana is a Virginia corporation headquartered at 4500 Dorr Street, Toledo, Ohio 43615.

11.     Defendant Michael J. Burns served as Dana's Chief Executive Officer and Chairman of the Board during the Class Period.

12.     Defendant Robert C. Richter served as Dana's Chief Financial Officer during the Class Period.

13.     Defendants Burns and Richter are collectively referred to herein as the "Individual Defendants."

14.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

4

15.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Dana, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

16.     As officers and controlling persons of a publicly held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, traded on the NYSE during the Class Period, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded securities would be based upon

truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

17.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Dana, each of the Individual Defendants had access to the adverse undisclosed information about Dana's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Dana and its business issued or adopted by the Company materially false and misleading.

18.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

19.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Dana common stock by disseminating materially false and misleading statements and/or

6

concealing material adverse facts. The scheme: (i) deceived the investing public regarding Dana's business, finances, financial statements and the intrinsic value of Dana common stock; and (ii) caused plaintiff and other members of the Class to purchase Dana securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Dana between March 23, 2005 to September 14, 2005, inclusive, and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21. The members of the Class are so numerous that joinder of all members is impracticable. During the Class Period, there were approximately 150,000,000 shares of Dana common stock outstanding that were actively traded on the New York Stock Exchange. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Dana or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

22. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

7

23.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

24.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by defendants' acts as alleged herein;

b.     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and financial statements of Dana; and

c.     to what extent the members of the Class have sustained damages and the proper measure of damages.

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Materially False And Misleading
### Statements Made During The Class Period

26.     The Class Period begins on March 23, 2005, with the publication of Dana's press release announcing a downward revision in its 2005 earnings

8

expectations due to increased raw material costs, component shortages, and lower-than-expected light-vehicle production. Taking these factors into account, and expressly representing that the revised guidance was not premised on an expectation of lower material cost prices, defendants revised its 2005 guidance to a range of $1.30 per share to $1.45 per share. In relevant part, defendant Burns stated the following:

> Mr. Burns added, "We are hopeful that we will see less pressure on material price increases during the balance of the year, but we can't count on this. We are accelerating our cost-reduction efforts to pull forward savings to offset the potential impact of continued pressure on material costs. Regarding the component shortage that has reduced heavy-duty axle shipments, we are working closely with the supplier to resolve the situation and are confident that we will see a substantial improvement in the second quarter. However, given the uncertain outlook for the light-vehicle industry in general, as well as on commodity prices, we feel it is prudent to lower our 2005 full-year guidance to $1.30 to $1.45 per share, from our previous guidance of $1.40 to $1.62 per share."

These representations assured the market that the Company expects to meet the new guidance even if the factors that caused the downward revision did not abate.

27. On April 20, 2005, Dana issued a press release announcing its results for the first quarter of 2005. In relevant part, defendants reported the following results:

> TOLEDO, Ohio, April 20 /PRNewswire-FirstCall/ -- Dana Corporation (NYSE: DCN) today announced that its 2005 first-quarter sales were $2.5 billion, compared to $2.3 billion during the same period last year. Net income for the quarter totaled $18 million, or 12 cents per share, versus $65 million, or 43 cents per share, for the period in 2004.

28. Defendant Burns commented on the results, reiterating the impact of high steel costs on Dana's business, noting that steel prices have decreased recently and that the Company would benefit from ongoing cost reduction efforts. Defendants reiterated the guidance disseminated in the March 23, 2005 press release, stating as follows in relevant part:

Commenting on the company's near-term outlook, Mr. Burns said, "Our full-year guidance remains $1.30 to $1.45 per share."

He continued, "As we put the recent component shortage behind us, and address other operational issues that have held back margin expansion in the Heavy Vehicle group over the past two quarters, we expect to more fully benefit over the remainder of the year from the strong demand anticipated in the North American commercial vehicle market.

"In the case of the Automotive Systems Group, the dominant issue has been the effect of higher steel prices," Mr. Burns added. "The good news is that the market price for raw steel has decreased in recent months and demand appears to be moderating. Although the price we pay for forgings and other parts with high steel content has been slow to follow the decrease for a variety of reasons, we remain hopeful that we'll see less pressure on steel and other material price increases during the balance of the year. Therefore, if light-duty production schedules for the balance of the year do not change significantly, we expect that our accelerated cost reduction efforts will lead to improved performance in this group as well."

29.     Later that day, defendants held a public conference call for securities analysts and investors. Investors were invited to access the call by telephone or on the Company's website. Transcripts of the call were available from several sources, such as Fair Disclosure Wire. In discussing the first quarter and the rest of the year, defendant Burns reiterated that the Company was not counting on a reduction of steel prices for the rest of 2005 and noted that the component shortage issue that impacted the first quarter was resolved:

On March 23rd we increased our outlook for steel -- the steel impact by 10 million or $110 million aftertax for the year. . . As you can see in the surcharge scrap steel prices, which are one of the indicators of overall steel costs, have decreased dramatically in the recent months and demand is moderating. But the reality is that many of the ingredients in steel, coke coal, alloys, and so forth are still high. As a result the price of forgings and other components we've purchased has been slow to follow the scrap decline. We remain hopeful that we'll see less pressure on steel and other material price increases during the balance of the year. *But because we can't count on this, we are acting decisively to accelerate our cost reduction efforts to realize savings to offset the potential impact of material costs*. And I'd like to move to Slide 6.

*** 

The second item that impacted first quarter earnings was a component shortage

from a principal supplier to our Commercial Vehicle operations. During March heavy-duty axle shipments were affected by this component shortage which had a direct effect on earnings. We can now report that the components supply has been restored and we will have the necessary product to fulfill our April shipments and expect this supply to remain sufficient going forward. Thanks to the cooperative efforts of everyone involved we made the best of a very difficult situation and it appears that this matter is now essentially behind us. [Emphasis added].

30.     In response to an analyst's question, defendant Burns represented that the Company's guidance took into account purchase reductions from Ford, a large Dana customer:

> KIRK LUDTKE: Hi. I got on the call late as well so I'm apologizing if you've talked about this, but does your guidance reflect the reduction in the Ford schedules that they announced today?

> MIKE BURNS: Yes. Our guidance, you know, if you look at the Ford thing, a lot of that was already built into what we expected. You know, the -- I don't think there's anything there that would cause us to change guidance.

31.     In responding to another analyst, defendant Burns again reiterated that the Company's guidance was not dependent on better steel prices, or improved ability to pass on steel costs to customers:

> CHRIS CERASO: Okay. And then just one follow-up. With regard to your guidance for the full year, is there anything baked into that specifically in the second half that relies on some kind of favorable resolution on price discussions that may still be pending with your customers?

> MIKE BURNS: There's nothing extraordinary in there that it relies on with regard to price.

32.     On July 20, 2005, Dana issued a press release announcing second quarter of 2005 results, "which showed significant improvement over results for the first three months of the year." Defendants reported the following results:

> - Sales of $2.6 billion were up 6 percent from the first quarter of 2005;

> - The addition of $215 million in net new business for the years 2005 to 2007 raised total net new business for this period to $1.3 billion;

> - Higher sales and cost savings drove operating profit improvements of 53

11

percent in the Automotive Systems Group and 48 percent in the Heavy Vehicle Technologies and Systems Group; and

- Net income, exclusive of unusual items, increased to $53 million, or 35 cents per share, compared to $18 million, or 12 cents per share, during the first three months of 2005. Unusual items in the second quarter included a net charge of $5 million related to enactment of new Ohio tax legislation and a $3 million net gain from the sale of certain Dana Credit Corporation (DCC) assets. With these unusual items, net income totaled $51 million, or 34 cents per share.

33.    Defendant Burns touted the Company's ability to grow and to improve profits through successful efficiency initiatives during tough times in the automobile industry:

"In the face of continuing industry-wide challenges, Dana people have made significant progress in strengthening our company," said Dana Chairman and CEO Mike Burns. "Specifically, our lean manufacturing and value engineering programs are delivering tangible results as evidenced by the substantial profit improvement from last quarter.

"Our cost reduction and efficiency programs are essential. But equally important to achieving our goals is our aggressive pursuit of steady top-line growth," Mr. Burns said. "To this end, we are extremely pleased to report that we have added another $215 million in the second quarter to our increasingly strong -- and diverse -- book of new business."

34.    Defendants reiterated the previously issued earnings guidance:

"We are encouraged by the profit improvement we've achieved since last quarter," Mr. Burns said. "And we believe there is considerable opportunity to achieve additional cost savings and process efficiencies as our efforts gain more momentum.

"Production schedules for North American heavy trucks continue to be stronger than expected and, as a result, we are raising our estimate for full- year 2005 production to 310,000 units from 293,000 units. The off-highway market segments we serve are also expected to remain strong for the rest of the year," he said. "We're also expecting to benefit from subsiding steel costs, which will be particularly important to the Automotive Systems Group.

"However," Mr. Burns continued, "given the uncertainty surrounding North American light vehicle production in the second half of the year, we are lowering our 2005 production forecast to 15.5 million units from 15.7 million units. We are also concerned about the possible impact on sales if the dollar continues to gain strength. As a result, our earnings expectations for the full year remain unchanged

12

at a range of $1.30 to $1.45 per share."

35.     On July 29, 2005, Dana filed its quarterly report for the second

quarter of 2005 on Form 10-Q with the SEC. The report was signed by defendant Richter

and reiterated the financial results first disseminated in the July 20, 2005 press release.

According to the Form 10-Q, the financial results contained therein fairly presented the

Company's financial condition:

> In our opinion, the accompanying condensed consolidated financial statements
> include all normal recurring adjustments necessary for a fair presentation of
> financial condition, results of operations and cash flows for the interim periods
> presented. Interim results are not necessarily indicative of full-year results. We
> have reclassified certain amounts in 2004 to conform to the 2005 presentation.
> These condensed consolidated financial statements should be read in conjunction
> with the audited consolidated financial statements and notes thereto included in
> our annual report on Form 10-K for the year ended December 31, 2004.

36.     In addition, the Form 10-Q contained certifications signed by

defendants Burns and Richter, respectively, representing that it was free from

misrepresentations and that the reported financial results fairly presented Dana's financial

condition and results of operations:

> Based on my knowledge, this report does not contain any untrue statement of a
> material fact or omit to state a material fact necessary to make the statements
> made, in light of the circumstances under which such statements were made, not
> misleading with respect to the period covered by this report;

> Based on my knowledge, the financial statements, and other financial information
> included in this report, fairly present in all material respects the financial
> condition, results of operations and cash flows of the registrant as of, and for, the
> periods presented in this report;

37.     The statements referenced above in ¶¶ 26-36 were materially false

and misleading because they failed to disclose the following facts, among others:

a.     The Company had improperly accounted for price

increases, which materially artificially inflated its second quarter of 2005 income;

13

b.      The Individual Defendants' assurances, made in written certifications filed with the SEC, that the second quarter Form 10-Q was free from misstatements and fairly presented the Company's financial condition and results of operations was patently false;

c.      The Company's apparent success was the result of improper accounting, did not reflect the reality of its business and deceived investors; and

d.      In light of these facts, which were known to defendants, defendants' guidance was not based on any rational basis and could not be met without a material drop in raw material prices, contrary to defendants' repeated assurances to the contrary.

## THE TRUTH BEGINS TO EMERGE

38.     On September 15, 2005, before the open of ordinary trading, Dana issued a press release announcing that it would likely restate second quarter 2005 financial results and that it had dramatically lowered its 2005 earnings guidance, to $0.60 to $0.70 per share from $1.30 to $1.45, a more than 100% reduction. Because of the expected earnings cut, the Company may have to write down its U.S. deferred tax assets and may be in violation of covenants contained in a loan agreement. A main reason given for the halving of the 2005 guidance was high steel costs, a factor that defendants repeatedly assured the market was already considered, and accounted for, in the guidance. In relevant part, the Company reported as follows:

> TOLEDO, Ohio, Sept. 15 /PRNewswire-FirstCall/ -- Dana Corporation (NYSE: DCN - News) today announced that it has revised its 2005 full-year earnings outlook to a range of $90 million to $105 million, or approximately 60 to 70 cents per share, from its previously announced range of $196 million to $219 million, or $1.30 to $1.45 per share. In both cases, the outlook excludes gains and losses on divestitures and asset sales, and other unusual items.
>
> The company is assessing whether, as the result of the change in earnings outlook,

14

it will be required to write down its U.S. deferred tax assets. A write-down of U.S. deferred tax assets and the consequent inability to record similar tax benefits in the future would not have a cash impact, but would have a direct negative impact on the revised 2005 full-year earnings outlook set forth above. At June 30, the company's U.S. deferred tax assets totaled approximately $740 million. The revised outlook includes approximately $60 million of tax benefits on domestic losses in the second half.

Dana Chairman and CEO Michael J. Burns said that this reduction reflects a reassessment of the company's full-year outlook after reviewing its preliminary results through the end of August. These results indicate that the company is being negatively impacted by continued higher-than-expected costs for steel and other materials, as well as increased energy costs. In addition, the company's Commercial Vehicle business has been unable to achieve projected cost reductions and is experiencing significant manufacturing inefficiencies. For these reasons, the company now expects that the Commercial Vehicle unit's performance in the balance of the year will be substantially below previous projections. Although less significant, results in the company's Automotive Systems business have been impacted by lower-than- anticipated light-vehicle production volumes on vehicles with significant Dana content.

"We are considering a number of significant measures, both operational and strategic, to improve our financial performance," Mr. Burns said. "We are acting swiftly and will make further announcements regarding our plans as soon as appropriate."

The company is also assessing the impact of the reduced earnings outlook on its ability to comply with certain covenants contained in its five-year bank facility and is initiating conversations with its banks in this regard.

39.     In reaction to this announcement, the price of Dana stock fell

dramatically, from $12.78 per share on September 14, 2005 to $9.86 per share on

September 15, 2005, a one- day drop of 22.8% on unusually heavy trading volume.

40.     On September 15, 2004, credit ratings agency Fitch cut Dana's

debt rating to junk status.

## UNDISCLOSED ADVERSE INFORMATION

41.     The market for Dana's securities was open, well-developed and

efficient at all relevant times.  As a result of these materially false and misleading

statements and failures to disclose, Dana's common stock traded at artificially inflated

15

prices during the Class Period. The artificial inflation continued until at least the end of the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Dana securities relying upon the integrity of the market price of Dana's securities and market information relating to Dana, and have been damaged thereby.

42.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Dana's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations.

43.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Dana's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Dana and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

44.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the damages suffered by plaintiff and the Class.

45.    During the Class Period, plaintiff and the Class purchased securities of Dana at artificially inflated prices and were damaged thereby. The price of Dana common stock declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## ADDITIONAL SCIENTER ALLEGATIONS

46.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Dana, their control over, and/or receipt and/or modification of Dana's alleged materially misleading misstatements and/or their associations with the Company that made them privy to confidential proprietary information concerning Dana, participated in the fraudulent scheme alleged herein.

## FIRST CLAIM

## VIOLATION OF SECTION 10(b) OF
## THE EXCHANGE ACT AND RULE 10b-5
## PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     During the Class Period, Dana and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Dana's securities; and (iii) cause plaintiff and other members of the Class to purchase Dana's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

49.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Dana's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.     In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the

making of affirmative statements and reports to the investing public, defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. Sections 210.01 *et seq*.) and Regulation S-K (17 C.F.R. Sections 229.10 *et seq*.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and earnings so that the market price of the Company's securities would be based on truthful, complete and accurate information.

51.     Dana and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Dana as specified herein.

52.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Dana's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Dana and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Dana's securities during the Class Period.

53.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public that they knew or recklessly disregarded was materially false and misleading.

54.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Dana's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such

knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Dana's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Dana's publicly traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Dana securities during the Class Period at artificially high prices and were damaged thereby.

56.     At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known of the true financial condition and business prospects of Dana, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Dana securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

57.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### VIOLATION OF SECTION 20(a) OF
### THE EXCHANGE ACT AGAINST THE INDIVIDUAL DEFENDANTS

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of Dana within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62. As set forth above, Dana and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, plaintiff prays for relief and judgment, as follows:

1. Determining that this action is a proper class action and appointing plaintiff as Lead Plaintiff and its counsel as Lead Counsel for the Class and certifying it as a class representative under Rule 23 of the Federal Rules of Civil Procedure;

2. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

3. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

4. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Ann Lugbill, Esq. (0023632)
2406 Auburn Ave.
Cincinnati, OH 45219
Telephone 513-784-1280
Facsimile 513-784-1449 fax
**Trial Attorney for Plaintiff**

23

**MILBERG WEISS BERSHAD &
SCHULMAN LLP**
Steven G. Schulman
Peter E. Seidman
Andrei V. Rado
One Pennsylvania Plaza – 49th Floor
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
*arado@milbergweiss.com*
*sschulman@milbergweiss.com*
*pseidman@milbergweiss.com*

**THE BRUALDI LAW FIRM**
Richard Brualdi
29 Broadway
New York, New York 10006
(212) 952-0602

**Plaintiff's Counsel**


## JURY TRIAL DEMANDED


Plaintiff hereby demands a trial by jury on all claims triable to a jury.

Ann Lugbill, Esq.

**Plaintiff's Counsel**